SANTOS JIMÉNEZ SOLÁ, Plaintiff and Appellant, *v.* ISIDORO ÁLVAREZ ET UX., Defendants and Appellees.

No. 9619. Argued May 3, 1948.—Decided November 5, 1948.

*José M. Valentín Esteves* for appellant.  *E. Martínez Rivera* and *L. Blanco Lugo* for appellees.

MR. ACTING CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The appellant, alleging to be the owner of a lot where appellees' house is located, brought this action in the lower court to compel them to sell the house to him.[1] The lower court dismissed the complaint on the ground that the lot did not belong to the plaintiff and that the defendants had the usufruct thereof by virtue of a concession made by the Municipality of Caguas in favor of the person who built the house.

Both parties introduced in evidence several certificates from the Registry of Property which reveal the following facts:

In 1904 Modesto Solá recorded the house in his favor by virtue of a possessory title proceeding which in that year he instituted in the Municipal Court of Caguas. In the petition he alleged and at the trial he testified, together with his witnesses, that he had built the house on a lot belonging to the Municipality of Caguas, whose usufruct had been granted to him by the municipality in 1898. The Mayor was notified of this proceeding as legal representative of the municipality [2] and he made no objection.

Modesto Solá sold the house to Ildefonso Solá Caballero and at the death of the latter's wife it was adjudicated to him as his share in the community property. By deed of December 10, 1923 Ildefonso Solá Caballero sold it to Ramón Díaz Reyes, who, with the consent of his wife, mortgaged it on that same day in favor of Bartolomé Esteva. The mortgage was foreclosed and the house was adjudicated to Esteva by a deed of sale of July 7, 1936. On the 30th of that month it was recorded in his favor.

On September 2, 1936 Díaz Reyes claimed the homestead

---

[1] The plaintiff maintains that his cause of action is based on Section 297 et seq. of the Civil Code and he cites Rivera v. Santiago, 56 P.R.R. 361; Carrasquillo v. Maldonado, Int., 56 P.R.R. 375 and Palermo v. District Court, 58 P.R.R. 191.

[2] Revised Statutes and Codes of P. R. (1902), § 612.

right which he alleged he had in the house and entered a notice of *lis pendens* in the registry of property. While this suit was pending, Bartolomé Esteva sold the house to Isidoro Álvarez and his wife, who are the present owners, by deed of December 1, 1936 and on the following day it was recorded in their favor. Lastly, by deed of January 2, 1937 Ramón Díaz Reyes and his wife settled the homestead suit with Isidoro Álvarez. As a result of this settlement Díaz Reyes received from Isidoro Álvarez the amount of $500 in payment of his homestead. It was further agreed that he would continue to live the *mirador* until March 31, 1937 without paying any rental whatsoever and that upon vacating the *mirador* Álvarez would pay him $50 in addition to the aforesaid $500.

We shall go back in the statement of the facts, in order to consider the vicissitudes which irrespective of the house, were experienced by the lot. After the house was mortgaged to Esteva but while Díaz Reyes was owner thereof, the latter, on May 27, 1935 bought the lot from the Municipality of Caguas for the price of $1.00. Notwithstanding his having purchased the lot, he concealed the fact to the point that when he was dispossessed of the house, he claimed the right of homestead, but took no steps in connection with the lot. Five years after he received the homestead money, he presented the deed of sale of the lot to the registry of property. Record was denied and he did not appeal from the Registrar's decision. Subsequently he sold the lot to Santos Jiménez Solá in March 19, 1943. On this same day the latter presented his title in the registry of property and record was denied on the ground that the lot had not been previously recorded in favor of the vendor. In order to expedite the inscription of his title, Jiménez Solá presented the deed of sale executed by the municipality in favor of Díaz Reyes. Record was again denied, among other grounds, because it appeared from the registry, according to the Registrar, that when Díaz Reyes purchased the house on Decem-

ber 10, 1923, he also acquired what the registrar called "rights inherent" to the lot; that when he mortgaged the house to Esteva the mortgage was made extensive to the rights he had acquired on the lot, pursuant to the third paragraph of § 107 of the Mortgage Law; that when the mortgaged property was adjudicated to Esteva in payment of his mortgage, the latter acquired all the rights that Díaz Reyes had on the mortgaged property, and finally, because when the deed in favor of Jiménez Solá was presented in the registry, the house, as well as the rights on the lot appeared recorded in favor of Isidoro Álvarez. Jiménez Solá then appealed to this Court. The decision of the Registrar was reversed and the registration of the title of the lot was ordered in favor of Díaz Reyes on July 14, 1943. *Jiménez v. Registrar*, 62 P.R.R. 335.

After the administrative appeal was decided, the Registrar, on July 29, 1943, at the request of Isidoro Álvarez entered a marginal note to the first inscription converting into one of ownership the record of possession of the house. Said note also stated that Álvarez had acquired the usufruct of the lot by the lapse of twenty years since the first entry of the property without the prescription having been interrupted.

The Registrar was notified of the decision rendered by this Court in the administrative appeal, but failed to comply with the terms thereof, and instead on August 3, 1943 he recorded, under the eleventh entry, the naked ownership of the lot in favor of Díaz Reyes and on that same day he recorded it in favor of Jiménez Solá under the twelfth entry.[3]

Jiménez Solá appealed to this Court for the second time. His administrative appeal was dismissed on November 4, 1943 for lack of jurisdiction. The lack of jurisdiction consisted in that the appeal did not seek a review of the refusal

---

[3] The conduct of the registrar is strange. He was bound to comply with the decision no matter what was his personal opinion.

by reason of an incurable defect or of a record made with a curable defect. What appellant prayed for was that a certain record be annulled and a new one made which might affect the rights of other persons. *Jiménez* v. *Registrar*, 62 P.R.R. 522.

As a result of this decision, on June 27, 1944 Jiménez Solá filed a complaint in the District Court of Caguas against the Registrar seeking a declaratory judgment to determine whether said officer was right in recording the naked ownership and not the perfect ownership of the lot in favor of the plaintiff. On June 12, 1945 he amended the complaint joining Isidoro Álvarez as party defendant, but later abandoned the suit because on July 6, 1945 the registrar, at the request of Jiménez Solá, cancelled by way of marginal notes the 11th and 12th entries of the naked ownership and on that same day made the 13th and 14th entries. Under the 13th entry he recorded the ownership of the lot in favor of Díaz Reyes. By the other, in favor of Jiménez Solá, his successor in title. As a ground for entering said cancellations he stated that he had committed material and substantial errors in entering the 11th and 12th inscriptions.

Having thus prevailed over the registrar and armed with the 14th entry which declared him owner of the lot in fee simple, Jiménez Solá demanded of Isidoro Álvarez, on July 19, 1945, to sell him the house. Álvarez refused. Jiménez Solá then instituted this action which was decided against defendant.

The question for decision is whether in the light of these facts Jiménez Solá may compel the defendant to sell him the house. We shall divide the discussion of the legal question into two parts. The first will consist of determining what right, if any, did Álvarez acquire in the lot when he bought the house from Esteva on December 1, 1936. The second will determine what effect did the record of ownership have in favor of Jiménez Solá.

I

■ We have pointed out that in the possessory title proceeding instituted in 1904, Modesto Solá and his witnesses testified that in 1898 Modesto Solá had erected the house on the lot, the use of which had been granted to him by the municipality and that the Mayor, when notified, made no objection. It is true that the Municipal Law of October 2, 1877,[4] in force until February 28, 1902, contained no provision whatsoever authorizing the municipalities to grant the use of lots for construction. Notwithstanding this, the municipalities made such concessions. Precisely, in order to put an end to this illegal practice, a Royal Decree was issued in Spain in May 25, 1900 which, implementing § 85 of said Law, provided that all lots on which construction could be erected could not be granted but could be sold and such sales had to be made by the government at a public auction.

The Municipal Law of 1877 was repealed and replaced by "An Act concerning municipalities", approved March 1, 1902 [5] which made no provision in connection with the grants of lots. Nor did the "Act to establish a system of local government and for other purposes" approved March 8, 1906,[6] contain such provision. However, Act No. 40 of March 7, 1912 (page 73) authorizing the municipalities to grant the use of lots to applicants for the construction of buildings thereon, provided in § 4 thereof:

"Section 4.—That all cessions of the use of lots made by any municipality to private persons, corporations or associations *up to the date of the approval of this Act*,[7] for the purpose of thereby encouraging the erection of buildings and urban development, are hereby declared to be valid, provided the grantee shall have duly complied with the conditions of the

---

[4] The text of this law is found in *Enciclopedia Jurídica Española*, Vol. 23, page 165.

[5] Revised Statutes and Codes of Puerto Rico (1902), pages 218–243.

[6] Comp. Rev. Stat. and Codes of P. R. (1911), page 346.

[7] Act No. 40 of 1912 confirms our contention that the municipalities had been granting the use of lots without legal authority.

grant, and shall pay such property taxes thereon as may here-
after be levied.   The municipal council shall be the sole judge
as to whether or not a grantee has complied with the conditions
of the grant, and where such question is to be considered the
procedure shall be such as provided in Section 2 of this Act."
(Italics ours.)

Thus was ratified the grant made by the Municipality of
Caguas to Modesto Solá in 1898 without any legal authority.
The record does not disclose whether the grantee complied
with the conditions of the grant, for § 4 itself, copied above,
expressly provided that "The Municipal Council shall be the
sole judge as to whether or not a grantee has complied with
the conditions of the grant." [8]   Furthermore, paragraph 19
of § 102 of the Law of Evidence establishes the presumption
*juris tantum* that private transactions have been fair and
regular.   There is no doubt, therefore, that Modesto Solá
lawfully acquired the usufruct of the lot.   But pursuant to
§ 1 of Act No. 40 of 1912 as well as § 70 of the Municipal
Law of 1928, the usufruct of the lot is granted to the grantee
and to his successors in title.   Consequently, once it is shown
that the usufruct was granted to Modesto Solá, said grant,
by operation of law, was conveyed respectively to his succes-
sors in title of the house, the last one being Isidoro Álvarez.

■■ Under the clear terms of the Mortgage Law we
cannot properly say that the mortgage made on the house
also encumbered the lot.   This is so because the lot is not an
accession to the house.   Consequently, §§ 110 and 111 of the
Mortgage Law are not applicable.   But in the last analy-
sis, as we shall readily see, the result was virtually the same
as if the mortgage on the house encumbered the lot.   We
cannot overlook the fact that the grant of the lot was made
in favor of Modesto Solá and his assigns subject to the statu-

---

[8] Section 70 of the Municipal Law in force approved April 28, 1928
authorizes the Assembly to revoke the concession.   Its decision shall be
final unless the prejudiced party, within thirty days after he had been
notified of the decision, files a petition for review before the proper
district court.

tory condition of keeping thereon a house in good condition.[9] The use of the lot was therefore a right attached to and inseparable from the house which was transferred together with it to each successive owner. In other words, the owner of the house could not convey the latter and at the same time keep for himself or someone else the right to the use of the lot, for according to the grant, only the owner of the house was entitled to the use of the lot. This being so, when Díaz Reyes executed the mortgage contract with Esteva the lien was constituted on a house which carried with it the right to the use of the lot. When Esteva became the owner of the house, as a result of the foreclosure proceeding, he acquired with the adjudication thereof the right to the use of the lot. Of course, when Esteva sold the house to Isidoro Álvarez, the latter acquired the same rights the vendor had.

## II

When Jiménez Solá purchased the lot from Díaz Reyes on December 19, 1943, Álvarez had been using it for seven years, for he purchased the house from Esteva on December 1, 1936. Jiménez Solá was aware of it, if not by personal notice at least by constructive notice, for Álvarez recorded the purchase immediately. In view of these facts we can not maintain that so far as Álvarez is concerned, Jiménez Solá was a purchaser in good faith. At most, Jiménez Solá might acquire title to the lot at the termination of the usufruct to which Álvarez and his assigns are entitled. For this reason, although we have termed as improper the conduct of the Registrar for disobeying the decision rendered by this Court in the first case of *Jiménez* v. *Registrar, supra,* we must concede, however, that his opinion to the effect that he could only record the naked ownership of the lot was correct, for that was the only interest that Díaz Reyes

---

[9] Section 70 of the Municipal Law of 1928 provides that after a lot is granted, the owner of the house constructed thereon shall have the use of said lot during such time as he maintains on said lot a building in good conditions.

acquired since he failed to duly record his title, and that interest was the most that according to the registry he could convey to Jiménez Solá. It is argued that in *Jiménez v. Registrar, supra*, it was ordered by this Court that the title to the lot be recorded in favor of Jiménez Solá after having previously recorded it in favor of Díaz Reyes. But it is clear that this decision could in no way prejudice Álvarez, who had not been a party to the suit and who, according to the registry, had rights inconsistent with the demands of Jiménez Solá. Precisely for this reason this Court should have refrained from taking cognizance of the appeal, for it is a well-settled rule that an administrative appeal does not lie against a decision of the registrar that may affect the rights of other interested parties. *Bartolomei v. Registrar of Property*, 2 S.P.R. 589; *Mollfulleda v. Registrar of Property*, 19 P.R.R. 950; *Comunidad Religiosa v. Registrar*, 55 P.R.R. 896 and Galindo y Escosura, *Legislación Hipotecaria* (1903 ed.), Vol. 2, page 633.

We have not overlooked the fact that under the 14th entry the full ownership of the lot was recorded in favor of Jiménez Solá, but § 33 of the Mortgage Law provides that "Instruments or contracts which are null under the law are not validated by their admission to record." Hence the rule that an entry originates no rights but merely protects those already existing by its publication in the registry. As Morell says, "the record, if made, does not cure the defect of nullity, does not render effective what is void, and does not give life to what was lifeless from its birth." *Legislación Hipotecaria*, Vol. 2 (1927 2d ed.), page 677.

Section 297 *et seq.* of the Civil Code and the cases cited by appellant [10] are inapposite. We are not dealing here with a mere builder in good faith. The right of the appellee to continue in the use of the lot while he keeps thereon a house in good condition is guaranteed by § 1 of Act No. 40 of 1912 and by § 70 of the Act of 1928 cited above, and in

---

[10] See footnote 1.

the absence thereof by the provisions of the Civil Code concerning usufruct.

In view of the conclusion we have reached with respect to the 13th and 14th entries it would seem plausible that following the spirit of liberality contemplated by the new Rules of Procedure, we should order the cancellation of said entries. But §§ 88 to 90 of the Mortgage Law Regulations establish the special proceeding which should be followed in order that a court or a judge may order the cancellation of entry or records. Thus, said § 88 provides that judges and courts before whom an action is brought for the annulment of an entry or record shall so inform the proper registrar. And that same Section provides that the registrar shall on the same day he receives notice from the judge or court, enter a marginal note in connection with the annotation or the record and said Section furnishes the form that should be followed by the registrar for entering the marginal note. Section 89 provides that if the petition for annulment should be denied, the judge or court shall also notify the registrar in order that he may cancel the marginal note referred to, thereby removing any cloud on the title by reason of the marginal note. Lastly, § 90 provides that the nullity of an entry or record having been decreed, the judge or court shall order its cancellation and another entered in its place according to the statutory provision. And this Section adds that the new record shall produce its effects from the date it should have produced it, according to the circumstances of the case.

Sections 89 and 90 are a sequel to § 88; but the latter is of paramount importance. It may happen that the nullity of a record is sought on grounds which do not clearly appear from the registry, yet the person in whose favor the entry or record has been entered, may have actual knowledge of the defect in the title. Under these circumstances if while the nullity proceeding is pending, a third person without actual knowledge of the defect acquires title or a real right on the

property, undoubtedly, under § 34 of the Mortgage Law the right acquired by said third person by virtue of the entries in the registry can not be cancelled. In such case, the right of the person seeking the annulment of the entry or record, would be defeated under § 34 of the Mortgage Law. It is in order to avoid such prejudices, that the Regulation requires, under § 88, that the registrar be notified of the action for the annulment of the entry or record and directs the latter that on the same day he receives the communication from the judge or court he shall enter a marginal note which shall operate as notice to everybody, that the validity of the record is being challenged in the courts and if in spite of this, another person acquires title or a real right to the property, he does it at his own peril and he can blame no one but himself of any prejudice he may suffer.

In the present case a petition for a declaratory judgment is involved. It does not appear from the record that the judge sent the proper notice to the registrar and it appears therefrom that no notice was entered in the registry to the effect that an application for annulment had been filed. Consequently, pursuant to the provisions of §§ 88 to 90 of the Mortgage Law Regulations we shall refrain in this case from ordering the cancellation of said entries.

The judgment is affirmed.

